## JOHN YORK v. THE STATE.

### No. 2228.  Decided February 27, 1901.

**1.  Cattle-Theft—Circumstantial Evidence—Charge of Court.**

On a trial for theft of cattle, if the fact of the original taking can only be inferred from the fact of the subsequent possession of the animals, it is a case of circumstantial evidence, and it is reversible error for the court to fail or refuse to charge on circumstantial evidence.

**2.  Same—Recent Possession and Reasonable Explanation—Charge on Weight of Evidence.**

On a trial for theft of cattle, a charge as to recent possession and reasonable explanation is upon the weight of evidence which instructed the jury that "if they believed from the evidence that the property alleged to have been stolen was so stolen and recently thereafter was found in the possession of the defendant, and that the defendant, when thus found in the possession of the same, gave an explanation of the same which appears reasonable and probably true; then, before you would be warranted in finding a verdict of guilty in this case, you must be satisfied from the evidence, beyond a reasonable doubt, that the other testimony in the case establishes the falsity of the explanation made by the defendant. And, if the State has failed to satisfy you that said explanation was false, then you will acquit the defendant." Following Wheeler v. State, 34 Texas Crim. Rep., 350.

**3.  Same—Ownership—Allegation and Proof—Charge.**

Where an indictment for cattle theft alleged possession in one W., who was holding the same for one G., the real owner, the court should have instructed the jury that in order to convict, the evidence must have shown that W. was in actual care, control and management as the special owner, holding the same for G., the real owner.

4. Same—Evidence.

On a trial for cattle theft, it is inadmissible to prove by a witness what he, the witness, had stated to the district attorney the day preceding the trial with regard to the sale and delivery of a certain cow which had escaped prior to the time the alleged stolen animal was taken.

APPEAL from the District Court of Victoria. Tried below before Hon. JAMES C. WILSON.

Appeal from a conviction of cattle-theft; penalty, two years imprisonment in the penitentiary.

The opinion states the essential facts in evidence. The charge of the court as to recent possession and reasonable explanation is copied in the second paragraph of the syllabus, supra.

*Davidson & Bailey,* for appellant.

*D. E. Simmons,* Acting Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of cattle-theft, and his punishment assessed at two years confinement in the penitentiary.

Exception was reserved to the court's charge for failing to submit the issue of circumstantial evidence. This was error. The facts conclusively show this a case of circumstantial evidence. In order to make this apparent, it is not necessary to detail all of the testimony. A few of the facts will be sufficient. Appellant, employed by Thomas & Friar, undertook to deliver twenty-eight head of cattle; driving them from Inez, in Jackson County, to the Wofford pasture, in De Witt County. Appellant had never seen the cattle until they were collected for Thomas & Friar, which seems to have been the day previous to the alleged theft. On the morning of the alleged theft, appellant and a negro undertook to carry the cattle between the points designated. The witnesses describe the day as one of the worst they had ever seen—raining in torrents; the whole country flooded with water; creeks and rivers all overflowing their banks. About three miles from the starting point the cattle were forced to swim an overflowed creek, and, when those of the cattle which first swam across were escaping in the brush and timber on the opposite side of the creek, some of them were still on the side from which the others started. The negro, after putting the last of the cattle in the creek, swam over and gathered up those seeking to escape—in fact, rounded up the entire bunch. While this was being done, appellant was on the opposite side of the creek, in trouble with his horse, which had fallen in the mud and water, and he was trying to get him up. While appellant was thus engaged, the negro had succeeded in gathering the cattle together, and was trying to hold them. Appellant finally crossed the creek, and joined the negro, and moved the cattle on in the direction of the Wofford ranch. The negro testified

that at this point there were some loose cattle in the timbered bottom, and some of these ran through the herd. It was near this point where the alleged stolen cow· was kept and milked by the alleged special owner, Waldrup. About ten or eleven miles from this point appellant and the negro put the ·cattle in Lynch's small pasture, and went to a house near by and secured dinner. A mile or so before reaching this point, one head of cattle gave out and lay down. The negro was discharged at his request at this point, and two boys, who are mentioned in the application for continuance, were employed and assisted in driving the cattle thence to the Wofford pasture. The cow alluded to as being left behind was brought up and placed in the herd. Lynch testified that he saw another one of the cattle belonging to this herd left behind, and called appellant's attention to it; that appellant returned in the direction of the cow, but did not get it, and it remained there and was in his pasture at the time he testified. He further testified that appellant then had twenty-seven head of cattle. This being true, it would establish the fact that appellant had lost one head. When appellant reached the Wofford pasture, a few miles further on, he had twenty-eight head—the alleged stolen cow said to be one of them. Appellant was unaware that he had the stolen cow until called to his attention a few days subsequent to placing the cattle in Wofford's pasture. His theory was, if he drove the cow at all, it must have gotten into the herd at the place where the cattle scattered through the bottom after swimming the creek. The State seemed to be uncertain· as to its theories, and introduced evidence to show that appellant had lost two head of cattle, one on the east side of the creek and the other at the point designated by Lynch, some eleven or twelve miles from the creek, and on the west side. It is a settled fact from this record, however, that appellant lost one head; and it is also settled that the parties who sold the cattle to Thomas & Friar were unable to identify either one of the two animals mentioned as being those sold by them to Thomas & Friar, and which were driven by appellant. Appellant had never seen the cattle before. The only evidence relied upon by the State to show theft by appellant was the fact that the alleged stolen cow was found in the Wofford pasture, the inference being that appellant put it there at the time he placed the herd spoken of in said pasture. The only party beside appellant with the herd at the creek was the negro employe, and he knew nothing of it, and assisted in driving the cattle as far as the Lynch pasture. If the cow was in the herd at that point, neither of the Lynches knew of it. If they did, they failed to testify to that fact. To say the least of it, they were not unwilling witnesses for the State. Now, the question sharply put is, when and where did appellant get this cow, and what is the proof as to taking under the statement above? It is evident that, in order to draw a conclusion of guilt, we must assume the taking from the fact of possession; for there is not a particle of direct proof in the record from any witness who saw appellant take the animal. The

trial court specially recognized this by giving a charge on reasonable account of recent possession of stolen property. Where the original taking is to be inferred from the fact of subsequent possession of alleged stolen property, it is a case of circumstantial evidence. Appellant excepted to the failure of the court to give this in charge to the jury. This error alone demands a reversal of the judgment.

The charge of the court in reference to reasonable account given by appellant of his possession is also erroneous, and has been condemned by the decisions of this court as being upon the weight of the evidence. Wheeler v. State, 34 Texas Crim. Rep., 350.

It is not necessary to discuss the error assigned in regard to the refusal of the continuance, as the witnesses may be in attendance upon another trial; and, if not, the matter will be presented in different form and under different circumstances. But, as presented here, it should have been granted, and it was error to refuse it.

There is also an erroneous charge, which we desire to call to the attention of the trial court. The indictment contained three counts, one of which alleged the possession of the property in Waldrup, who was holding the same for R. W. Griffith, the real owner, and ownership in said Griffith. This count is in proper form, and alone was submitted under the charge for the consideration of the jury. Under this count the evidence must show the possession in Waldrup, and the real ownership in said Griffith. This the proof showed beyond question. The court charged the jury that, in order to convict, they must believe that Griffith was the owner, or had the actual care, control, and management, of the animal charged to have been stolen. The charge should have been that, in order to convict, Waldrup must have the actual care, control and management as special owner, with the real ownership in Griffith, otherwise there would have been a variance between the allegations and the proof, and the accused would be convicted upon a charge not set out in the indictment or preferred by the grand jury.

While the State's witness Kutcha was being examined, the district attorney was permitted to prove by him that in the courthouse in Victoria, on the day preceding the trial of this case, he stated to the district attorney and counsel for the stock association that the Gosh cow, in the Bishop pasture, was one of the cows sold to Thomas & Friar, and one of the cows delivered to defendant for Thomas & Friar. The State had failed to prove by this witness, he refusing to testify, that the Gosh cow was one of the cows sold Thomas & Friar and delivered to appellant to be driven to the Wofford pasture. This was a very important fact, because, if the Gosh cow was one of those delivered to appellant at Inez, then it is more than probable that she escaped from appellant at or before reaching the creek; the alleged stolen animal being taken, if at all, after passing this creek. Under what rule of evidence this testimony was admitted, we do not understand. The judgment is reversed and the cause remanded.

*Reversed and remanded.*